## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**BEVERLY CULLEY**                                                                              **PLAINTIFF**

**VS.**                                                          CAUSE NO. <u>4:20cv190-MPM-DAS</u>

**WEST BOLIVAR CONSOLIODATED SCHOOL DISTRICT,**
**EVERETH STANTON, EVELYN HENRY,**
**MICHAEL HONORABLE, JACQUELINE LLOYD,**
**AND WILLIE GRIFFIN IN THEIR OFFICIAL**
**AND INDIVIDUAL CAPACITIES**                                              **DEFENDANTS**

### COMPLAINT
### (JURY TRIAL DEMANDED)

**COMES NOW**, Beverly Culley, [hereinafter referred to as "Plaintiff"], by and through counsel of record, and files this, her Complaint, against West Bolivar Consolidated School District, Evereth Stanton, Evelyn Henry, Michael Honorable, Jacqueline Lloyd, and Willie Griffin in their individual and official capacities as members of the West Bolivar Consolidated School District Board of Trustees [hereinafter collectively referred to as the "the Defendants"], and in support thereof, would respectfully show unto the Court the following:

### INTRODUCTION

1.      Plaintiff entered into a contract with the West Bolivar Consolidated School District as superintendent of schools on August 1, 2017 for the period commencing August 1, 2017 through and including June 30, 2019.  The contract provides for an annual salary compensation of $130,000.00.

2.      Plaintiff performed the duties of superintendent as required by federal and state law, including, but not limited to the policies implemented by the Mississippi Department of Education and West Bolivar Consolidated School District until Defendants' malicious, wrongful, and unlawful termination of the Plaintiff on February 11, 2019.

3.     Plaintiff requested a hearing before the Board.  The Defendants denied Plaintiff a *public* hearing but held the hearing in executive session for seven (7) days over the course of three (3) months.  At the conclusion of the hearing, the Defendants *subjudice* voted to enter a Final Order terminating the Plaintiff.  The Final Order was entered on or about November 14, 2019.

4.     Plaintiff submits to this Court that Defendant Griffin, the District's board attorney, willfully, maliciously, and vengefully masterminded the wrongful termination of Plaintiff.  Plaintiff submits to this Court that the Defendant board members *subjudice* acted in concert with Defendant Griffin to recklessly and deliberately effect the termination of the Plaintiff without just cause.

5.     Plaintiff submits that the Defendants, in both their individual and official capacities, acted in concert to treat her in a severely disparate, demeaning, discriminatory manner than the male Superintendents and interim Superintendents.  Defendants' disparate treatment of the Plaintiff includes, but is not limited to, intentional and willful sabotage of the Plaintiff's ability to sufficiently carry out her duties as Superintendent of West Bolivar Consolidated School District, unwanted and inappropriate sexual advances, retaliation, public humiliation, harassment, defamation and, ultimately, termination.  *See* **Exhibit "1" and Exhibit "2."**

6.     Plaintiff seeks declaratory relief and damages from the defendants to redress the deprivations of her rights to employment under her contract resulting from her wrongful termination as superintendent of the West Bolivar Consolidated School District.  Plaintiff seeks declaratory relief and damages for gender discrimination, retaliation, and harassment in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e), et. seq.) and the Civil Rights

Act of 1991.  Plaintiff also seeks declaratory relief and damages for the Defendants' malicious, willful, bad faith breach of contract.

7.    Plaintiff further seeks compensatory and punitive damages against all defendants herein pursuant to 42 U.S.C. §§1981, 1983 and the Civil Rights Act of 1991 for their malicious, willful, reckless, and deliberate indifference to Plaintiff's rights.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991.

9.    This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with the federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

10.    Venue is proper in this Court because Defendants maintain facilities and business operations in this District and all or most of the events giving rise to this action occurred within this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

11.    Defendant West Bolivar Consolidated School District [hereinafter referred to a "WBCSD"] is a political subdivision of the State of Mississippi organized pursuant to § 37-7-104.1 of the Mississippi Code Annotated, whose chief responsibility is the provision of public education for children in grades K-12.  WBCSD is overseen by a board of trustees consisting of five (5) members who are elected and responsible for establishing policies and employing a superintendent to run the day to day operations of WBCSD.

12.     The individually named Defendant Board of Trustee members who are parties to the instant litigation are as follows:

       a.     Defendant Evereth Stanton is an adult resident citizen of Shaw, Bolivar County, Mississippi.

       b.     Defendant Evelyn Henry is an adult resident citizen of Shaw, Bolivar County, Mississippi.

       c.     Defendant Michael Honorable is an adult resident citizen of Rosedale, Bolivar County, Mississippi.

       d.     Defendant Jacqueline Lloyd is an adult resident citizen of Gunnison, Bolivar County, Mississippi.

       e.     Defendant Willie Griffin is an adult resident citizen of Greenville, Washington County, Mississippi and served as the board attorney for the West Bolivar Consolidated School District at all relevant times in this Complaint.

13.     Defendants Stanton, Henry, Honorable, and Lloyd comprise the majority of the Board of Trustees for the West Bolivar Consolidated School District.  Defendant Griffin served as the board attorney at all times during the issues subject to this Complaint.  Plaintiff brings the instant civil action of and against Defendants Stanton, Henry, Honorable, Lloyd, and Griffin in their official and individual capacities seeking to impose personal liability upon them jointly and severally for their wrongful and malicious actions of and against Plaintiff while acting under the color of state law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.    Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  On August 5, 2020, the EEOC issued Plaintiff's Notice of Right to Sue.

15.    Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## STATEMENT OF FACTS

### FACTUAL BACKGROUND

16.    Plaintiff incorporates ¶¶ 1-15 above by reference and incorporates them hereto as if fully copied herein.

17.    On August 1, 2017, Plaintiff was hired as superintendent of the West Bolivar Consolidated School District ("WBCSD").  Upon arriving in the District, the internal operations of the District were in nearly complete chaos and disarray.

18.    The District had 33 long term substitutes or one year licensed teachers on staff and approximately 14 staff members with accreditation violations.

19.    On August 3, 2017, two days after the Plaintiff was hired, the Mississippi Department of Education ("MDE") issued a notice to the District documenting its accreditation issues.  **Exhibit "3."**  The accreditation issues documented by MDE occurred under Interim Superintendent, Charles Barron.  Plaintiff immediately began compliance efforts with MDE whereby she was able to remedy the accreditation issues.  **Exhibit "4."**

20.    The District was underway on several projects prior to Plaintiff's arrival in the District.  The Plaintiff did not institute any of the projects that were ongoing in the District.  The

projects ultimately became the pretexual cause for Plaintiff's termination among other pretexual and false causes.

21.     Despite the projects having been underway prior to her arrival, at the direction of Defendant Willie Griffin, Plaintiff was maliciously and wrongfully terminated by the Defendants for the institution of the projects.

22.     Defendant Griffin exercised an extraordinary amount of influence over the Board in making District decisions, as well as some of the District's employees.

23.     Defendant Griffin spear-headed the Plaintiff's termination in retaliation for his own personal improper interests.

24.     Defendant Griffin historically made unwanted inappropriate and sexual advances toward the Plaintiff.

25.     In 2006, when the Plaintiff was the Superintendent for the Benoit School District, Defendant Griffin was working on a case for the District as outside counsel.  During his handling of the District case, Defendant Griffin visited the District to retrieve documents from the Plaintiff related to the case.  During his visit, Defendant Griffin "came on to" the Plaintiff.  The Plaintiff was required to run from Defendant Griffin in her office to avoid his advances.

26.     In or about 2007, Defendant Griffin was handling a legal custody matter for which the Plaintiff was required to sign documents.  The Plaintiff was scheduled to visit Defendant Griffin's office to sign the documents.  However, Defendant Griffin showed up unannounced at the Plaintiff's marital home.  The Plaintiff was wearing a loose blouse. Defendant Griffin placed his hand under Plaintiff's blouse, grabbed her breasts, and tried to place her breasts into his mouth.  Defendant Griffin's advances were unwanted and unwelcomed by

the Plaintiff.  The Plaintiff aggressively rejected his actions and informed Defendant Griffin that she had cameras in her home that were recording and to "leave my house right now."

27.     Upon accepting employment with the West Bolivar Consolidated School District, Plaintiff believed that she would be safe from such advances from Defendant Griffin because of the presence and authority of the District Board of Trustees.

28.     However, after accepting the position with the District, Plaintiff came to learn that Defendant Griffin willed an unsurmountable amount of control and influence over the District's Board of Trustees.

29.     In 2017, the Plaintiff was required to travel to Mr. Griffin's office to retrieve a copy of her *Contract for Employment*.  Defendant Griffin and the Plaintiff were in a discussion about District related matters.  When the Plaintiff communicated her professional opposing position on the issue, Defendant Griffin "leaned in" to the Plaintiff in a very intimidating, taunting manner and stated "You need to just follow my lead."

30.     During her tenure in the West Bolivar Consolidated School District, Defendant Griffin continued his offensive conduct, routinely making "cat calls" at the Plaintiff and attempting to coerce the Plaintiff to engage in an intimate or sexual relationship with him.

31.     In or around December 2017, Defendant Griffin threatened the Plaintiff in a Board meeting during executive session in the presence of the Board members stating, "You don't want me to get a hold of you."  The Board members observed Defendant complacently and did nothing.  Defendant Griffin's behavior was never addressed by the Board because the Board passively ignored and accepted his inappropriate behavior.

32.     After the Plaintiff rejected Defendant Griffin's numerous inappropriate and unwanted sexual advances, Defendant Griffin engaged in a barrage of retaliatory actions to punish the Plaintiff, including, but not limited to:

a.     Defendant Griffin sought and received authority from the Board to institute a meritless "internal investigation" against the Plaintiff for which he invoiced and received payments from the District totaling $13,145.20.  *See* **Exhibit "1(A)."**  Throughout the sham internal "investigations," Defendant Griffin randomly interrogated District employees, including the *lawn maintenance employee*, regarding whether the Plaintiff was taking money from him "under the table."  **Exhibit "5" ¶¶5-7.**

b.     Defendant Griffin and Defendant Stanton maliciously and wrongfully instigated a misappropriation claim against the Plaintiff that resulted in demands being wrongfully issued against the Plaintiff by the State Auditor's Office.  As a result, the Plaintiff's bonding company paid the demands to resolve the matter with the State Auditor's Office. The bonding company, in turn, brought suit against the Plaintiff for indemnification.  The Plaintiff was required to file a Cross-Claim against the former Board attorney in the indemnification litigation because she relied on the former attorney's advice and direction to take the actions which resulted in the issuance of the demands.

c.     Defendant Griffin advised the Board not to pay for the Plaintiff's legal defense fess in the indemnification litigation and, simultaneously, directed the Board to pay the legal defense fees of the former Board attorney whose advice the Plaintiff relied on.  *See* **Exhibit "1"** ¶ 16.  Defendant Griffin requested to represent the former attorney against the Plaintiff in the indemnification litigation.  *Id*. The Defendants *subjudice* adhered to Defendant Griffin's spiteful direction, whereby the Defendants issued an order to pay

the legal defense fees of the former board attorney in the indemnification litigation and declined to pay the Plaintiff's legal fees in the indemnification litigation. *Id*.

d.      On May 13, 2019, Defendant Griffin directed the Board to prohibit the Plaintiff from having a termination hearing because "she [the Plaintiff] filed an EEOC Charge against the District" and "accused the District of causing damages to her name and reputation and a public hearing would only further that claim." **Exhibit "1" ¶20;** *See also* **Exhibit "1(C).**  The Defendants voted to prohibit the Plaintiff from having a *public* hearing at the direction of Defendant Griffin.  *See* **Exhibit "1" ¶21.**

33.      The Board recklessly, routinely, and with deliberate indifference approved Defendant Griffin's malicious and wrongful directives.  Several of the Board members, namely, Defendant Evereth Stanton, Evelyn Henry, Michael Honorable, and Jaqueline Lloyd, acted in concert with the wrongful actions and directives of Defendant Griffin.  Defendants Stanton and Defendant Lloyd routinely engaged in bullying, gas-lighting, and publicly mocking and humiliating the Plaintiff in public board meetings and at District events.  *See* **Exhibit "1"** and **Exhibit "2."** Among the many instances of malicious conduct, examples of the Defendants' concerted and malicious efforts are as follows:

a.      At the direction of Defendant Griffin, the Defendants routinely intruded upon the statutory powers of the Superintendent against the letter of the law.  *See* **Exhibit "1" ¶8**.

b.      At the direction of Defendant Griffin, the Defendants voted to employ the Excellence Group, an outside consultant group chaired by Charles Barron, a former Superintendent of WBCSD and colleague of Defendants Griffin and

Stanton, to meritlessly audit the Plaintiff. Defendants paid the group approximately $30,500.00 to submit a redundant report that was no more expansive than the recommendations previously made by the Plaintiff in the course of her employment. *See* **Exhibit "2" ¶ 9**. The Defendants' utilized the report of the conflicted Excellence Group to assist in the premeditated, malicious termination of the Plaintiff.

c.      Defendants Stanton and Lloyd routinely and conveniently "forgot" conversations they had with the Superintendent in an effort to publicly humiliate, gas-light, intimidate, and discredit the Plaintiff. *See* **Exhibit "2" ¶¶10-13**; **Exhibit "1" ¶9.** *See also* **Exhibit "2" ¶¶ 5-13.**

d.      Defendants often acted in concert to prevent Board member Ruby Miller from attending Board meetings when the Board met in executive sessions to secretly devise malicious plots against the Plaintiff. Board member Miller was the only Board member who spoke up against the unjust treatment of the Plaintiff by the Defendants. **Exhibit "1" ¶11.** Board member Miller's opposition against Defendants' abuse and mistreatment of the Plaintiff was often met with condemnation and ostracism by the Defendants. *See* **Exhibit "1" ¶11, ¶17, ¶19**.

e.      In preparation for the January 2019 meeting wherein the Board voted to terminate the Plaintiff, Defendant Stanton and Defendant Henry encouraged Board Member Miller not to attend the meeting stating "you should not be present in the meetings regarding Dr. Culley because you always vote in her favor and you will not like what we have to say about her." **Exhibit "1" ¶17.** On April 1, 2019, after the Plaintiff filed her EEOC Charge, Defendant Stanton warned Board member Miller stating that "the Board will be

discussing Dr. Culley's case and it would be better if you do not attend the meeting."

**Exhibit "1, ¶ 19.**

f.      The Defendants' public humiliation, gas-lighting, and abuse of the Plaintiff were so severe that the Plaintiff's husband was required to attend the meetings with her as support.  Members of the public witnessed the Defendants' abusive treatment of the Plaintiff and would become outwardly appalled at Defendants' actions. *See* **Exhibit "1"** **¶¶8-10**.  At one meeting, the public became so disgusted with the Defendants' severe display of abuse against the Plaintiff that they left a Board meeting in protest against the Defendants' treatment of the Plaintiff.  *Id*.

## DEFENDANTS' FALSE AND PRETEXUAL
## REASONS FOR PLAINTIFF'S TERMINATION

34.      In 2016, prior to Plaintiff's arrival into the District, the District's Board of Trustees approved for cameras to be installed within the District.  Alert I was contacted and selected by Raymond Russell, the District's Technology Coordinator, in or around December 2016, whereby services began in or around August 2017.  **Exhibit "6."**

35.      Wrongfully and maliciously, the Defendants accused and terminated the Plaintiff for selecting Alert I despite Alert I having been selected by Mr. Russell prior to Plaintiff's arrival.  *Id*. The Defendants also wrongfully accused and terminated the Plaintiff for payments to Alert I despite the District's Business Managers approval of the payments.

36.      In June 2017, prior to the Plaintiff's arrival, repair services were requested by the interim Superintendent, Charles Barron.  **Exhibit "7" and Exhibit "8."**  At Mr. Barron's request for services, James Giles, the District's Building and Grounds Manager, selected 3 Way Construction to repair the air conditioners for the return of students.  *Id*. The repairs by 3 Way

Construction began in June 2017 prior to the arrival of the Plaintiff into the District. *Id*. Yet, Defendants maliciously and wrongfully accused and terminated the Plaintiff for the hiring of company.

37.     In August 2017, ECN Computer Networking was requested to come into the district by the Plaintiff to perform diagnostic work in order to repair the phone lines. During the course of ECN's time in the District, Raymond Russell, the District's Technology Director, requested additional services which were performed by ECN and invoiced to the District. **Exhibit "9."** The Defendants maliciously and wrongfully accused and terminated the Plaintiff for soliciting the invoiced services despite the clear testimony from the owner of ECN that the Plaintiff did not request the services for which the District was billed. *Id*.

38.     In or around September 2017, Defendants maliciously and wrongfully accused the Plaintiff of not obtaining quotes prior to the purchase of chrome books for the District, despite quotes having been obtained prior to the purchase.

39.     As a disciplinary measure for the projects named above, the Board required the Plaintiff to attend financial training in or around October 2017. *See* **Exhibit "1" ¶¶12-14**.

40.     No transactional or financial errors occurred under the leadership of the Plaintiff from that point forward throughout Plaintiff's entire tenure with WBCSD.

41.     On January 20, 2018, the Defendants evaluated the Plaintiff and scored the Plaintiff at 2.14 out of a possible 5.0 points. **Exhibit "10."**

42.     On January 10, 2019, the Defendants performed their second evaluation of the Plaintiff and scored the Plaintiff at 3.02 out of a possible 5.0 points. **Exhibit "11."**

43.     In or around December 2018, the Plaintiff received a report from a teacher, Mrs. "A" that she was being harassed by Defendant Stanton. Plaintiff began conducting an

investigation into the harassment claims made by Mrs. A. Plaintiff informed Defendant Griffin regarding the claims made by Mrs. A since the claims were made against Defendant Stanton, a board member.

44.     Plaintiff's investigation revealed that in addition to the claims of harassment made by Mrs. A. against Defendant Stanton, Defendant Griffin was also inappropriate with Mrs. A.

45.     In January 2019, approximately thirty (30) days after the Plaintiff informed Mr. Griffin of her investigations into the claims made by Mrs. A, Plaintiff was placed on administrative leave without explanation. *See* **Exhibit "1" ¶17.** Mr. Griffin then spear-headed and instituted termination proceedings against the Plaintiff despite the Plaintiff's satisfactory evaluation score.

46.     The Defendant board members *subjudice* arbitrarily followed the directive of Defendant Griffin to terminate the Plaintiff despite their own satisfactory evaluation scoring of the Plaintiff.

47.     On ***Valentine's Day***, February 14, 2019, Defendant Griffin spitefully drafted and served the Plaintiff with the *Notice of Reasons for Termination* at her marital home. **Exhibit "12."**

48.     The "reasons" provided by the Defendants in their *Notice of Reasons for Termination* were largely based on the projects which were instituted prior to the Plaintiff's arrival in the District and had been previously resolved by the Board when it required the Plaintiff to attend financial training. *See* **Exhibit "1" ¶14**.

49.     The remaining "reasons" in the *Notice of Reasons for Termination* were outright false, trivial, and pretextual in nature designed by Defendant Griffin to conceal his retaliation against the Plaintiff for her investigation of Mr. Stanton and himself, as well as to conceal his

retaliation and punishment of the Plaintiff for her rejection of his inappropriate and unwanted sexual advances.

50.     An example of one of the blatantly false "reasons" contained in the Defendants' *Notice of Reasons for Termination* is Defendants' allegation that the Plaintiff failed to evaluate principals and administrative staff.  The Plaintiff had, in fact, evaluated each and every principal and administrative staff, produced every evaluation as evidence during her termination hearing, and the principals and administrators testified during Plaintiff's termination hearing that they had been evaluated by the Plaintiff.

51.     On April 12, 2019, Defendant Griffin maliciously and arbitrarily amended the *Notice of Reasons for Termination* to impose additional frivolous and meritless "reasons." **Exhibit "13."**

52.      Two days later, on April 15, 2019, Defendant Griffin maliciously and arbitrarily amended the Notice of Reasons for a second time to impose even more frivolous and meritless "reasons" in order to place undue pressure on the Plaintiff and to punish her.  **Exhibit "14."**

## CAUSES OF ACTION

## COUNT I: GENDER DISCRIMINATION

53.     Plaintiff incorporates ¶¶ 1-52 above by reference and incorporates them hereto as if fully copied herein.

54.     Plaintiff has been the victim of unlawful discriminatory conduct in the workplace. Plaintiff was unlawfully subjected to disparate treatment and suffered adverse employment actions by Defendants on the basis of her sex or gender.  These employment actions were in violation of Title VII, 42 U.S.C. § 2000-e-2(a) and the Civil Rights Act of 1991.

55.     Over the past ten (10) years or more, the Defendants have only hired one *female* Superintendent aside from the Plaintiff, whose tenure only lasted approximately six (6) months.

56.     All other Superintendents and interim Superintendents hired within the District were and are male.

57.     Each and every male Superintendent and interim Superintendent was provided external providers to assist with the academic performance of the District which consistently resulted in the academic success of the District.

58.     Plaintiff requested and practically begged for external providers to assist with the improvement of the District's academic performance during her tenure.

59.     The Defendants refused to provide the Plaintiff with external providers which severely hindered Plaintiff's ability to lead the District to the academic success in which the District experienced with the male Superintendents and interim Superintendents.

60.     After terminating the Plaintiff, the Defendants hired a male Superintendent, John I. Taylor, and ***immediately*** provided him with external providers as they had with all other male Superintendents and interim Superintendents within the District to assist with his academic performance and success within the District.

61.     Upon information and belief, Mr. Taylor has never served as a Superintendent prior to the Defendants hiring him as Superintendent for WBCSD.

62.     Upon information and belief, despite Mr. Taylor's lack of experience, knowledge, and qualifications to serve as a Superintendent, Defendants contracted to pay Mr. Taylor approximately $130,000.00 per year; the same salary that it paid the Plaintiff who has over thirty (30) years of experience in the educational system and approximately fifteen (15) years of experience as Superintendent.

63.     The Defendants did not ridicule, mock, gas-light, publicly humiliate, harass, or conspire against any of the District's male Superintendents and interim Superintendents. **Exhibit "1" ¶¶9-11; ¶23.**  *See also* **Exhibit "2" ¶14.**

64.     The Defendants did not exhibit the extreme vitriol and professional sabotage against the male Superintendents and interim Superintendents as they did against the Plaintiff. *Id.*

65.     Defendant Griffin did not harass and make unwanted sexual advances against the male Superintendents and interim Superintendents as he did against the Plaintiff.  *Id.*

66.     Plaintiff has been made to suffer severe mental anguish and emotional distress, to include, but not limited to, debilitating anxiety and panic attacks which affect her bodily functions and ability to obtain comparable employment, the requirement of constant medication for her anxiety and panic disorder, loss of employment and future employment opportunities, and loss of wages and benefits, as a direct and proximate result of the Defendants' violation of her civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and the Civil Rights Act of 1991.  Plaintiff is entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. §§ 1981(a) and 1983, including actual damages, compensatory damages, punitive damages, and attorney's fees.

## COUNT II: RETALIATION

67.     Plaintiff incorporates ¶¶ 1-66 above by reference and incorporates them hereto as if fully copied herein.

68.     In or around January 2019, after Plaintiff had repeatedly denied the sexual advances of Defendant Griffin and revealed her investigation of the claims made by Mrs. A. to Defendant Griffin, Defendant Griffin masterminded the events *subjudice*, with the assistance of

the Defendants herein, to punish, retaliate against, harass and, ultimately, terminate the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. and the Civil Rights Act of 1991, 42 U.S. C. § 12203.

69.    Plaintiff engaged in protected activity when she investigated and reported the discrimination claims made by Mrs. A to Defendant Griffin.

70.  Plaintiff engaged in protected activity when she rejected Defendant Griffin's inappropriate and unwanted sexual advances against her.

71.    In retaliation against Plaintiff for her investigations of the harassment claims made by Mrs. A. and reporting the harassment claims made by Mrs. A, the Defendants maliciously, recklessly and with deliberate indifference acted in concert to terminate the Plaintiff without just cause.

72.    In retaliation against Plaintiff for rejecting Defendant Griffin's sexual advances, the Defendants maliciously, recklessly and with deliberate indifference acted in concert to terminate the Plaintiff without just cause.

73.    There is a causal connection between the Plaintiff's investigations of Ms. A's harassment claims against Defendant Stanton and Griffin and Plaintiff's rejection of Defendant Griffin's sexual advances to the Defendants' *subjudice* concerted, premeditated and malicious efforts to sabotage, destroy, and terminate the Plaintiff.

74.    The retaliation endured by the Plaintiff would dissuade a reasonable employee from investigating complaints of harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. and the Civil Rights Act of 1991, 42 U.S. C. § 12203

75.     The retaliation endured by the Plaintiff would dissuade a reasonable employee from rejecting unwanted sexual advances in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. and the Civil Rights Act of 1991, 42 U.S. C. § 12203.

### COUNT III: HARRASSMENT/HOSTILE WORK ENVIRONMENT

76.     Plaintiff incorporates ¶¶ 1-75 above by reference and incorporates them hereto as if fully copied herein.

77.     Plaintiff was routinely harassed by and through the concerted efforts of the Defendants *subjudice* as described in this Complaint.

78.     Defendants maliciously and willfully caused their false claims and allegations against the Plaintiff both during and after her employment with the District to be published in newspapers, publicized on the local news station(s), and circulated throughout the professional and public communities in a concerted effort to harass, embarrass, defame, humiliate and cause harm to the reputation of the Plaintiff.

79.     Defendants' discriminatory actions, statements, threats, and conduct were unwelcomed, sufficiently severe or pervasive, subjectively hostile and abusive, detrimentally affected the Plaintiff and would be viewed as objectively hostile and abusive to a reasonable person.

80.     Defendants' malicious actions created an environment in the workplace which was abusive, intimidating and not suitable for any reasonable person to endure as a condition of continued employment.

81.     Defendants' malicious, calculated, reckless, and deliberately indifferent harassment of the Plaintiff is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq. and the Civil Rights Act of 1991.

## COUNT IV: BREACH OF CONTRACT

82.     Plaintiff incorporates ¶¶ 1-81 above by reference and incorporates them hereto as if fully copied herein.

83.     On or about November 14, 2019, Defendants terminated a valid contract it entered into with Plaintiff without a reasonable, just, or meritorious basis therefor.

84.     Defendants had a duty to honor the terms of the *Contract for Employment* with the Plaintiff.

85.     Defendants breached their duty to honor the terms of the contract with the Plaintiff when they maliciously, frivolously, recklessly, and wrongfully terminated the Plaintiff.

86.     As a direct result of the Defendants' malicious breach of contract, the Plaintiff has been unable to date to obtain comparable employment and has suffered irreparable harm to her reputation.

87.     The actions of the Defendants were calculated, premeditaed, and intentionally designed to breach the contract with Plaintiff.  Their actions had the purpose, effect, and result of breaching the Plaintiff's valid contract with WBCSD and causing harm to her and her reputation.

88.     As a result, Plaintiff is entitled to damages for breach of contract and extra contractual damages for bad faith breach of contract.

**WHEREFORE PREMISES, CONSIDERED**, Plaintiff prays this Honorable Court assumes jurisdiction over these causes, and upon hearing the merits, grant the following relief:

(a) Declare that the employment practices complained of in this Complaint are unlawful and violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq*. and the Civil Rights Act of 1991.

(b) Find that the Defendants terminated the Plaintiff without good cause and breached the

*Employment Contract* with the Plaintiff in bad faith;

(c)  Award Plaintiff a judgment against Defendants for back pay, front pay, and benefits.

(d)  Award a judgment for compensatory damages in the amount of $2,300,000.00 against WBCSD or by the jury as provided by 42 U.S.C. § 1983 making her whole for the loss of employment, inability to obtain comparable employment, embarrassment, humiliation, emotional distress and damages arising from the willful, intentional and malicious conduct of the Defendants.

(e)  Award a judgment for punitive damages in the amount of $500,000.00 against each individual Defendant for a total award of punitive damages in the amount of $2,500,000.00 and a similar amount for any and all unknown persons for the malicious conduct and reckless disregard and/or indifference for the rights of Plaintiff to deter like conduct in the future and to make an example of them in order to deter others who are similarly situated from like conduct.

(f)  Award Plaintiff compensatory damages against Defendants Griffin, Stanton, Henry, Honorable, and Lloyd in the amount of $3,000,000.00;

(g) Grant a permanent injunction enjoining the Defendants from instituting and utilizing their policies to further pretexual agendas in violation of Title VII of the Civil Rights Act of 1974 and the Civil Rights Act of 1991.

(h) Order the Defendants to pay costs and expenses, including, but not limited to, attorneys' fees pursuant to the relevant provisions of 42 U.S.C. §§ 2000(e), 1981 and 1983.

(i) Award Plaintiff all such other and further relief as may be necessary and proper and to which she is otherwise entitled to pursuant to the provisions of 42 U.S.C. §§ 2000(e) et. seq., § 1983, and § 1981.

(j) Award Plaintiff all such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**, this the 30th day of October, 2020.

**BEVERLY CULLEY**

**BY:**     */s/ Renetha L. Frieson, Esq.*
**RENETHA L. FRIESON, ESQ., MBN 103005**
**Attorney for Plaintiff**

**FRIESON LAW OFFICE, PLLC**
412 South Washington Avenue
Post Office Box 1811
Greenville, Mississippi 38702-3118
Telephone:  (662) 335-3118
Facsimile:  (662) 335-3120
E-mail:  rfrieson@friesonlawofficepllc.com