**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**BEVERLY CULLEY**                                                                    **PLAINTIFF**

**v.**                                                                              **NO: 4:20-CV-190**

**WEST BOLIVAR CONSOLIDATED SCHOOL**                              **DEFENDANT**
**DISTRICT, et al.**


**OPINION**

This matter is before the Court on the motions for summary judgment filed by Defendants Evereth Stanton, Evelyn Henry, Michael Honorable, Jacqueline Lloyd, and Willie Griffin (the "Individual Defendants") (ECF No. 126) and Defendant West Bolivar Consolidated School District ("WBCSD"). (ECF No. 127). Plaintiff Beverly Culley has responded in opposition to the motions, and all defendants have replied. The Court has thoroughly reviewed the record and carefully considered the applicable law. This is the decision of the Court.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form the same case or controversy under Article III of the United States Constitution.

### BACKGROUND

Dr. Beverly Culley was employed as the superintendent of the West Bolivar Consolidated School District on August 1, 2017.[1] She was hired under a two-year contract that extended through June 30th, 2019. In February of 2019, almost six months before the end of the contractual term,

---

[1]For the purpose of summary judgment, the Court accepts Plaintiff's version of the facts, as supported by record evidence, as true. The Court is making no factual findings in this Opinion.

1

the WBCSD Board of Trustees ("Board") voted to terminate Dr. Culley's employment agreement for cause. Defendants Evereth Stanton, Evelyn Henry, Michael Honorable, and Jacqueline Lloyd were all Board members at the time, as was Ruby Miller, who is not a defendant in this case. Defendant Willie Griffin acted as attorney for the Board when the events giving rise to this litigation transpired.

When Dr. Culley became superintendent of the WBCSD on August 1, 2017, she inherited a school district in distress. Just a day earlier, on July 31, 2017, the WBCSD's bonding company had filed a complaint for indemnification against former Board members for demands from the State Auditor's Office for alleged improper payments of accumulated leave to district employees. (ECF No. 133-5). On August 3, 2017, the Mississippi Department of Education notified former superintendent Johnson-Wadlington in writing of numerous deficiencies that jeopardized the District's accreditation status. (ECF No. 133-2).

Dr. Culley states that during the first few months of her tenure, Attorney Griffin made inappropriate sexual advances toward her and that she rebuffed the advances. The affidavit of Dale Sullivan, who was Deputy Director of the Mississippi Association of School Superintendents during the 2017-18 and 2018-19 school years, reflects that Dr. Culley contacted him in or around November 2017. (ECF No. 135-3). Mr. Sullivan avers that "Dr. Culley informed me that Attorney Griffin had come into her home and sexually assaulted her on one occasion before her hire as Superintendent in the West Bolivar Consolidated School District" and that "Dr. Culley also informed me that since her hire into the West Bolivar Consolidated School District, Attorney Griffin had engaged in inappropriate sexual gestures towards her." (*Id.*) He states that "Dr. Culley sought guidance from me on how she could address this situation with Attorney Griffin's

harassment" and that he advised Dr. Culley "to report Attorney Griffin's behavior to the Board of Trustees for the West Bolivar Consolidated School District." (*Id.*)

According to Dr. Culley, from the time of her arrival as superintendent, Defendants Stanton and Griffin pressured her to bring in former superintendent Charles Barron as a consultant in the District. Dr. Culley resisted doing this because Mr. Barron had been superintendent during a period of deterioration in the District and was responsible for the accreditation issues that arose before Dr. Culley's arrival. Disregarding Dr. Culley's concerns, the Board, at the direction of Stanton and Griffin, hired the Excellence Group, with former superintendent Barron as chairperson, for consulting services. Dr. Culley observes that the Board paid the Excellence Group $30,000 for recommendations she had already made to the Board. She points out that the Excellence Group criticized her performance based on results attributable to Mr. Barron's own performance as superintendent.

Dr. Culley asserts that throughout her tenure as superintendent of the WBCSD, the Board treated her differently from former male superintendents by consistently denying her resources critical for success. For example, she notes that the Board significantly hampered her ability to successfully manage the School District as superintendent by refusing to provide her with External Providers, which assist schools struggling in performance, and which were given immediately to male superintendents when requested. Dr. Culley also claims that the Board humiliated her during public sessions of the Board meetings through gaslighting, ridicule, and insults. (ECF No. 127-5). She describes Board Members "forgetting" conversations and Board Member Stanton raising his voice and "slapping" the table to intimidate her. Board Member Ruby Miller called the other Board Members' treatment of Culley "painful to watch." (Miller aff., ECF No. 7-1).

Dr. Culley states that the Board falsely accused her of procurement/purchasing violations. Board Attorney Griffin performed an "investigation" into Culley's dealings with several services, recommended that those payments be denied, and required Culley to attend financial training. Dr. Culley presents evidence that either the purchases were made before she assumed her position or did not exceed the procurement threshold at the time. (ECF No. 134).

The affidavit of Teacher A, formerly a teacher in the WBCSD, reflects that during the spring semester of 2018 she reported to her principal conduct by Defendants Griffin and Stanton that could be viewed as sexual harassment. (ECF No. 135-4). Upon learning of the alleged misconduct reported, Dr. Culley began an investigation into Teacher A's claims. (*Id.*) Teacher A's affidavit indicates that after she reported the alleged misconduct and the investigation began, Mr. Stanton and other members of the Board retaliated against Teacher A by unfairly criticizing her work performance and threatening not to renew her contract. Teacher A avers that "as a result of the hostile environment created by Mr. Stanton and Attorney Griffin, I left my employment with the District." (*Id.*)

On April 18, 2018, the bonding company amended the complaint to name Dr. Culley as a party defendant in the indemnification case against former Board members arising out of the State Auditor's action. Dr. Culley contends that Defendants Griffin and Stanton directed the bonding company to amend the complaint to name her. She asserts that she should never have been added to the complaint, because she had authorized accumulated leave payments to employees during her tenure only at the direction and with the approval of former Board Attorney Danny Griffith. (*Id.*) Dr. Culley filed a cross claim for malpractice against Attorney Griffith. She claims although she was improperly named in the indemnification action, the Board Members flaunted their

4

involvement with the State Auditor's demands and refused to provide her with legal counsel to defend herself in the resulting indemnity suit. (ECF No. 133).

In February 2019, the Board voted to terminate Dr. Culley's contract for neglect of duty, insubordination, and other good cause, supported by specific infractions. (ECF No. 7, Ex. 12). On March 18, 2019, Dr. Culley filed an EEOC charge that refuted in detail the Board's reasons for her termination. (ECF No. 127-5). Dr. Culley also asserted that the Board had disproportionately hired males for the superintendent position and had treated her less favorably than male superintendents. She recounted numerous anecdotal instances of discrimination and stated that the reasons given for her termination were pretext for discrimination. (*Id.*) The EEOC issued a Right to Sue letter on August 5, 2020, and Dr. Culley filed this lawsuit on October 30, 2020.

As to WBCSD, Plaintiff asserts claims under Title VII for sex discrimination, sexual harassment, and retaliation; breach of contract; and negligent infliction of emotional distress. As to the Individual Defendants, Plaintiff brings claims under 42 U.S.C. § 1983 for sexual harassment (quid pro quo or hostile work environment) and retaliation; civil conspiracy to terminate her employment unlawfully; and intentional infliction of emotional distress.[2] All defendants now seek summary judgment.

## LEGAL STANDARDS

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). A genuine dispute as to material fact exists "if the evidence is such that a reasonable jury

---

[2] The Court earlier dismissed other claims Plaintiff asserted in her Amended Complaint. (ECF No. 52). The Court also ruled that Dr. Culley failed to exhaust and may not rely on allegations that Defendant Griffin sexually harassed her or that Defendant Stanton retaliated against her for investigating sexual harassment allegations against him, to support her claims under Title VII. (*Id.*) The Court refers to those allegations as "the subject claims."

5

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *See Saketkoo v. Adm'r of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (citing *Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir. 2000)). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150 (2000). If a moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc City Sch. Dist.,* 634 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.,* 37 F.2d 1069, 1075 (5th Cir. 1994). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

**DISCUSSION**

## I. Title VII Claims against WBCSD

For her Title VII claims, Culley is confined to the factual allegations presented in her EEOC Complaint. Therefore, Culley may not use her allegations of (1) sexual harassment by Board Attorney Griffin toward her and retaliation that resulted from her refusing his advances, or (2) retaliation toward her after instigating an investigation of allegations of Stanton sexually harassing a teacher, in support of her Title VII claims.

### a. Title VII Gender/Sex Discrimination

6

Under Title VII it is "an unlawful employment practice for an employer … to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 200e-2(a)(1). The plaintiff can prove discrimination through either direct or circumstantial evidence. *Salinas v. AT&T Corp.,* 314 F. App'x 696, 698 (5th Cir. 2009). If the plaintiff can only prove Title VII discrimination through circumstantial evidence, then the *McDonnell Douglas* burden-shifting framework is deployed. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 892 (1973)). Under *McDonnell Douglas*, the plaintiff has a prima facie case if she demonstrates that she "(1) is a member of a protected class; (2) was qualified for [her] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, that others similarly situated were treated more favorably." *Id.* (quoting *Okeye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 612-13 (5th Cir. 2001). In this case, it is not disputed that Dr. Culley is a member of a protected class, was qualified to be superintendent, or suffered an adverse employment action (termination). Defendant argues that Dr. Culley fails to identify others similarly situated who were treated more favorably, but that is beside the point, as the fact that Culley was replaced by John Taylor, a man, is not in dispute. (ECF No. 134 at 6; 133-8). Dr. Culley has satisfied the elements of the prima facie case of Title VII discrimination.

Under the *McDonnell Douglas* framework, once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant-employer to "articulate a legitimate, non-discriminatory reason for its action." *Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 402 (5th Cir. 2001) (citing *Shakelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999)). At this stage, the "burden is one of production, not persuasion; it can involve no credibility

7

assessment." *Reeves,* 530 U.S. at 142 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

The defendant has met its burden of production by submitting admissible evidence that articulates "legitimate, non-discriminatory" reasons for its termination of Culley. (*See* 127, Ex. 7; *see also* 7, Ex. 12) WBCSD fired Culley for Neglect of Duty, Insubordination/Neglect of Duty, and Good Cause, providing a laundry list of supporting reasons. These included, for example: declarations from Board Members that "Dr. Culley was not performing to the standard … expected" after the district grade had fallen from a "C" to a "F," and findings by the Board that Culley made unauthorized contracts, misrepresented her employment status to the Miss. Public Employees Retirement System, failed to evaluate administrators, wrongfully transferred the sole high school teacher, accused WBMCS staff of "cheating the students," and failed to maintain board minutes despite repeated directives to do so. (*See, e.g.,* 127-7; *see also* 30-2).

In the final shift of the *McDonnell Douglas* framework, after the employer demonstrates evidence of legitimate reasons for termination, the plaintiff-employee is afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves,* 530 at 143 (quoting *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). As the defendant notes, "employers are entitled to be unreasonable in terminating their employees so long as they do not act with discriminatory animus." *Owens v. Circassia Pharms., Inc.,* 33 F.4th 814, 826 (5th Cir. 2022) (quoting *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir. 2002)) (internal quotations omitted). The question, then, is not whether the employer made a reasonable decision in terminating its employee, but rather "whether, viewing all of the evidence in a light most favorable

to the plaintiff, a reasonable factfinder could infer discrimination." *Owens*, 33 F.4th at 826 (quoting *Crawford v. Formosa Plastics Corp.,* 234 F.3d 899, 902 (5th Cir. 2000)).

A plaintiff's prima facie case, along with sufficient evidence that the employer's asserted justifications for termination are false, may permit a conclusion that the employer unlawfully discriminated. *Reeves,* 530 U.S. at 148. However, "an employer would be entitled to [summary judgment] if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

Culley refutes several of the legitimate reasons offered by WBCSD and provides evidence that they were pretext for discrimination. Therefore, disputes as to material facts preclude summary judgment in this claim. For example, Culley offers evidence that the Board continuously delayed and refused her requests to hire External Providers, which assist schools struggling in performance, ultimately hindering her ability to advance the District's grade. (*See* ECF Nos. 127-5; 133-18). She also provided evidence that the "unauthorized contracts" WBCSD cited were made before she was hired as superintendent of WBCSD. (See ECF No. 7-9]. Additionally, Culley refutes the assertion that she never evaluated the principals and administrative staff with their testimonials stating otherwise. (*See* ECF No. 133-4).

In this case, Culley advances enough evidence contradicting WBCSD's justifications for terminating her to create a dispute of material facts. Additionally, Culley advances three categories of evidence that she argues demonstrate that WBCSD's reasons for firing her were pretext for discrimination.

## 1. WBCSD's Discriminatory View of Women

First, Culley introduced a sworn statement from former superintendent James Johnson-Wadlington made in his 2017 EEOC complaint against WBCSD.

> The [WBCSD] Board acknowledged that women are less likely to do wrong than men. Men think they are all powerful and can't be controlled. I was pretty certain that the Board was going to hire a female to fill my position based on my experience with the Board and what the Board's attorney [Defendant Willie Griffin] said.

[133, Ex. 10].

This evidence presents a genuine dispute of material fact as to whether WBCSD acted with "discriminatory animus" towards women in its adverse treatment of Culley. It is true, as the defendant argues, that Johnson-Wadlington is asserting that the Board favored women. However, it seems that the reason behind the asserted favoritism is that the Board allegedly views women as not "all powerful" and controllable. A party cannot defeat summary judgment with "only a scintilla of evidence," however this submission indicates a discriminatory animus and reinforces the question of whether the reasons given for Culley's termination were pretextual. *See Turner,* 476 F.3d at 343.

## 2. WBCSD's History of Disproportionately Hiring Men as Superintendent

Second, Culley advances evidence that WBCSD has a history of disproportionately hiring male superintendents. The "ultimate factual issues" here are "whether there was a pattern or practice of such disparate treatment" and if so, whether the differences were premised on gender. *See International Bhd. of Teamsters v. U.S.,* 431 U.S. 324, 355 (1977) (citing *McDonnell Douglas Corp.,* 411 U.S. at 805). Out of the eight superintendents (including three interim superintendents) hired by WBCSD during the past ten years, only 2 were women, including Culley. [134 at 9]. In *International Brotherhood of Teamsters,* the Supreme Court reasoned that the usefulness of statistics in discrimination cases depends on the surrounding facts and circumstances. 431 U.S. at

10

340. The disproportionate hiring of men, taken together with other facts like Wadlington's sworn EEOC statement, create a dispute as to whether WBCSD's reasons for terminating Culley were pretext for discrimination.

### 3. WBCSD's Less Favorable Treatment of Dr. Culley

Finally, Culley argues that she experienced disparate treatment compared to previous male superintendents. To show disparate treatment, Culley must first identify her comparators and "produce … evidence that [they] were similarly situated employees" *Owens,* 33 F.4th at 827. The Fifth Circuit has "defined 'similarly situated' narrowly, requiring the employees' situations to be 'nearly identical.'" *West v. City of Houston, Texas,* 960 F.3d 736, 740 (5th Cir. 2020). Employees are similarly situated if they "(1) held the same job or responsibilities, (2) shared the same supervisor or had their employment status determined by the same person, and (3) have essentially comparable violation histories." *Id. (*quoting *Lee,* 574 F.3d at 260). While Culley identifies her comparators, she offers no evidence that they were similarly situated besides mere conclusory statements that her position was "exactly identical and similarly situated to the male superintendents" and that all superintendents were "expected to perform the 'exact' same job duties as described in WBCSD's job description." [*See* 134 at 7].

Again, however, the dispute of material facts as to whether WBCSD's reasons for terminating Culley were pretextual precludes summary judgment on this Title VII claim. Therefore, summary judgment for Culley's Title VII discrimination claim is not granted.

### b. Title VII Harassment

As stated earlier, under Title VII it is "an unlawful employment practice for an employer … to discriminate against any individual … because of such individual's race, color, religion, sex, or

national origin." 42 U.S.C. § 200e-2(a)(1). An employer's liability for workplace harassment under Title VII depends on the status of the harasser: co-worker or supervisor. *E.E.O.C. v. Boh Bros. Constr., Co.*, 731 F.3d 444, 452 (5th Cir. 2013). Here, WBCSD Board Members are Culley's supervisors because they are "empowered … to take tangible employment actions against the victim." *See id.* at 452-3 (quoting *Vance v. Ball State Univ.,* 570 U.S. 421, 424 (2013)). To establish a prima facie case of harassment arising out of a supervisor's conduct, the plaintiff must demonstrate that: (1) she "belongs to a protected class;" (2) she "was subject to unwelcome … harassment;" (3) "the harassment was based on a protected characteristic;" and (4) "the harassment affected a 'term, condition, or privilege' of employment.'" *Boh Bros. Constr.,* 31 F.3d at 453 (quoting *Lauderdale v. Tex. Dep't of Criminal Justice,* 512 F.3d 157, 162-63 (5th Cir. 2007)).

To affect a "term, condition, or privilege" of employment, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* There is no dispute that Culley is a member of a protected class, and Culley offers a plethora of evidence that she was subject to harassment. (ECF No. 133-5).

Culley faced abuse by Board Members during public board meetings to a degree so severe that, according to Ruby Miller's affidavit, members of the public "got up and left the meeting". In his affidavit, Edward Hill, Director of Food Services, described Board Member Stanton's treatment of Culley "painful to watch," after Stanton "condescending[ly]" questioned Culley about her request to transfer a cook as if he knew nothing about it, though he had questioned the cook about the transfer a day earlier. (ECF No. 7-2). Board Member Miller testified that Board Member Stanton "often belittled and yelled" at Culley and that Board Members Stanton and Lloyd would talk to Culley "in such a 'nasty' manner in public sessions that "the public was outwardly appalled; mumbling and speaking under their breath in disbelief." (ECF No. 7-1). An audio recording of a

public board meeting reveals Stanton speaking to Culley in an aggressive tone, cutting her off, talking over her and hitting the table to add force to his tone. [*See* 133 at 10-11]. Both Miller and the Director of Food Services claimed that they had never seen the District treat former superintendents in this manner.

In another instance, Board Members Lloyd, Stanton, and Board Attorney Griffin were being so hostile about Culley's request to obtain a chair (Culley had a history of back problems) that Board Member Henry began crying, stating that "I know what it is like to be sick. Y'all shouldn't treat her like this." (ECF No. 133-5). Culley claims that the environment WBCSD created was so hostile and dangerous that her husband was required to attend the Board meetings with her (ECF No. 133-7).

The list goes on, including one decapitated rabbit left in front of the entrance to Culley's workplace, though its source is unverified. However, to establish harassment under Title VII Culley must also demonstrate that the harassment was based on her gender**.** *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("[the plaintiff] must always prove that the conduct at issue … actually constituted 'discrimination because of sex.'") (internal ellipses and italics omitted). Culley offers no evidence that the harassment was because of her gender. Therefore, distasteful though the conduct alleged may have been, summary judgment on this claim is granted.

### c. Title VII Retaliation

Title VII makes it unlawful for "an employer to discriminate against any of its employees … because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To

establish a prima facie case of retaliation using circumstantial evidence, the plaintiff must show that "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Saketkoo,* 31 F.4th at 1000.

Culley claims that WBCSD retaliated against her because "it resented that she – *as a woman* – would have the audacity to file a cross-claim against the *male* former [Board] attorney" during an indemnification action filed by a bonding company. [134 at 40]. Culley alleges that because she filed the cross-claim, WBCSD retaliated by refusing to retain counsel for her defense in violation of its own policy. *Id.* Culley fails to meet the first element because she does not show that she was engaged in a Title VII protected activity. Culley compares her case to *Fulton v. Miss. State Univ.,* where the Court held that the plaintiff was within the zone of protection after she was transferred for her association with a co-worker who complained of sexual harassment. However, Culley's cross-claim has no relation to a Title VII protected activity. No. 1:17-cv-70-GHD-DAS, 2018 WL 651342 at *3, (N.D. Miss. Jan. 29, 2018). The U.S. Supreme Court has ruled that Title VII forbids "discrimination on the basis of association with or advocacy for a protected party." Culley, however, did not engage in protected activity by advocating for herself against a former male Board Member in an indemnification action unrelated to Title VII. *See id.* Therefore, summary judgment is granted on Culley's Title VII retaliation claim.

## II.     State Claims against WBSCD

### a.     Negligent Infliction of Emotional Distress

For a claim of negligent infliction of emotional distress against an employer to fall outside of the governance of the Mississippi Worker's Compensation Act ("MWCA"), the actions of the employer must have gone "beyond negligence, gross negligence, or recklessness." *Bowden v.*

14

*Young,* 120 So. 3d 971, 976 (Miss. 2013). In short, the plaintiff must prove "that the employer acted with an actual intent to injure the employee, with full knowledge that the employee would be injured and with the purpose of the action being to cause injury to the employee." *Bowden,* 120 So. 3d at 976. Obviously, to get outside the MWCA, the action has to be beyond negligence and must reflect a willfulness consistent with intent. In that case, such a finding must be determined by the jury.

There is no dispute as to the fact that Culley was owed a duty by WBCSD to be treated without sexual harassment and retaliation. The question at issue here is whether the duty was breached, and if so whether the breach was intentional. To survive summary judgment, the plaintiff must present "specific facts showing a genuine factual issue for trial." *Harris ex rel.,* 634 F.3d at 690. Dr. Culley has brought forward affidavits and other evidence supporting her claim that she experienced, complained of, and investigated sexual discrimination and sexual harassment in her employment, and that WBCSD retaliated by terminating her employment in a pretextual and humiliating fashion. Whether this amounts to an intentional breach of WBCSD's duty to protect Dr. Culley from the risk and harm caused Dr. Culley is a jury question, and so the claim may proceed.

### Breach of Contract

"The elements of breach of contract are: (1) the existence of a valid and binding contract; (2) breach of the contract by the defendant; and (3) money damages suffered by the plaintiff." *Guinn v. Wilkerson,* 963 So. 2d 555, 558 (Miss. Ct. App. 2006). There is no factual dispute as to elements one and three. Culley accepted a two-year contract, and she was discharged prior to serving two years. Element two is at issue because Culley argues that the reasons for discharge

presented by the defendants are not for legitimate cause, but rather are pretext for discrimination. If Culley is correct, WBCSD's termination of her contract constitutes a breach.

Culley presents evidence that her contract was unlawfully terminated, therefore creating a dispute of material facts. As discussed above, Culley's Title VII discrimination claim must proceed to the jury because a dispute exists as to whether WBCSD's justifications for Culley's terminating were pretext for discrimination. For example, Culley submitted evidence that WBCSD falsely terminated her for purchasing violations and "unauthorized" contracts, and not evaluating principals and administrators. Further, Culley's "subject claims" were only barred from her Title VII claims, providing her with even more evidence of unlawful termination in her breach of contract claim. Culley argues that she was terminated because she rejected Board Attorney Griffin's unwanted sexual advances and investigated the sexual harassment claims of Teacher A against Griffin and Board Member Stanton. There is a factual dispute as to whether Culley's termination was motivated by discrimination, retaliation, or other unlawful motive amounting to a breach of the contract by WBCSD. Defendant WBCSD is not entitled to summary judgment on this claim.

**III.    Claims against Individual Defendants under 42 U.S.C. § 1983**

**IV.    Claims against Individual Defendants under 42 U.S.C. § 1983**

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 165-66 (5th Cir. 2007) (quotation omitted).[3]

Defendants correctly note that Plaintiff's complaint fails to link the § 1983 claims to any alleged constitutional violation, whether under the Equal Protection Clause, First Amendment, or otherwise. Plaintiff simply does not mention the Constitution in her complaint. But the Defendants have had fair notice that Plaintiff's claims of sexual harassment under § 1983 are necessarily tied to the Equal Protection clause and retaliation for speech to the First Amendment. Standing alone, at this stage of the case, Plaintiff's failure to identify the Equal Protection clause or First Amendment in the complaint does not justify summary judgment in favor of Defendants.

Defendant's argument that the claims fall outside the statute of limitations likewise fails. In an action brought under § 1983, a federal court must apply the statute of limitations the forum state provides. *Cruz v. Louisiana ex rel. Dept. of Public Safety and Corrections*, 528 F.3d 375, 378 (5th Cir. 2008). "The relevant limitations period in Mississippi is three years from the day the cause of action accrues." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); Miss. Code Ann. § 15-1-49 (2023). The period begins "when the plaintiff becomes aware or has sufficient information to know that he or she suffered an injury." *Id.* The Court finds that the date of Dr. Culley's termination – her injury – is the starting point for the statute of limitations. Dr. Culley was terminated in February 2019 and filed this case in October 2020, well within the statute of limitations.

---

[3] The Court questions whether Defendant Griffin was a state actor, a requirement for liability under § 1983. The parties have not briefed this issue. The Court assumes for the purpose of ruling on the motion that Defendant Griffin was a state actor but will require the parties to brief the issue before trial.

Plaintiff's retaliation claim under the First Amendment fails for a different reason. Supreme Court precedent holds that for a public employee's speech to be protected by the First Amendment, he or she must be speaking as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "An employee is not speaking as a citizen – but rather in his role as an employee – when he 'makes statements pursuant to his official duties.'" *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 421). Dr. Culley investigated Teacher A's allegations of sexual harassment in her role as superintendent of WBCSD. "Activities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008). Summary judgment in favor of the Individual Defendants is appropriate as to the retaliation claim.

"Sex discrimination and sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment." *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). "The circuits addressing the issue have allowed plaintiffs suing their public employers for sexual harassment and sex discrimination to assert claims under both Title VII and section 1983." *Id.* (citing cases from First, Eleventh, Tenth, Fourth, Second, Eighth, Ninth, and Seventh Circuits). "Section 1983 and Title VII are parallel causes of action" and so "the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale*, 512 F.3d at 166. Title VII prohibits sexual harassment as a form of employment discrimination. *Wallace v. Performance Contractors, Incorporated*, 57 F.4th 209, 220 (5th Cir. 2023). "There are two types of sexual harassment under Title VII: quid-pro-quo and hostile-environment harassment." *EEOC v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc). To establish a claim of quid-pro-quo sexual harassment, an employee must show that the acceptance or rejection of a supervisor's alleged

sexual harassment resulted in a tangible employment action." *Wallace*, 57 F.4th at 220 (quotation omitted). To establish a hostile work environment claim, a plaintiff must show that "(1) she belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action." *Id.* (quotation omitted).

On the summary judgment record, a reasonable juror could determine that Dr. Culley has satisfied the elements of a quid pro quo sexual harassment claim as to Defendant Griffin. She has come forward with evidence that Defendant Griffin made inappropriate sexual advances and engineered her termination after she rebuffed him. Whether Defendant Griffin was a "supervisor" of Dr. Culley depends on whether he had authority to take tangible employment action against her. *Higgins v. Lufkin Industries, Inc.*, 633 F.App'x 229, 233 (5th Cir. Dec. 16, 2015). Even if Defendant Griffin did not have actual authority to take tangible employment action against her, he may be liable under a cat's paw theory, under which a plaintiff "must show that the person with retaliatory [or discriminatory] animus used the decisionmaker to bring about the intended … action." *Zamora v. City of Houston*, 789 F.3d 326, 331 (5th Cir. 2015). The claim of quid pro quo sexual harassment as to Defendant Griffin may proceed to trial.

The Court is not persuaded that Dr. Culley has established a genuine issue as to material fact regarding the culpability of the other Individual Defendants for quid pro quo sexual harassment. The Court finds Dr. Culley's rejection of Defendant Griffin's advances simply too attenuated from the conduct of the other Individual Defendants to support a determination that they too engaged in quid pro quo sexual harassment.

To the extent Dr. Culley brings a hostile work environment claim against the Individual Defendants under § 1983, the claim fails for the same reasons as her Title VII sexual harassment claim against WBCSD, discussed earlier in this Opinion.

## V.     Civil Conspiracy – Individual Defendants

"Under Mississippi law, [a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Gallagher Basset Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quotation marks omitted). The elements of a civil conspiracy are "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 339 (Miss. 2013) (citations and footnote omitted). The agreement "need not extend to all details of the scheme and may be express, implied, or based on evidence of a course of conduct." *Id.*

The record includes ample evidence based on which a reasonable juror could find that two or more of the Individual Defendants agreed to cast Dr. Culley in a false light and terminate her employment for pretextual reasons after she rebuffed Mr. Griffin's advances, argued against bringing Mr. Barron as a consultant, and authorized an investigation of allegations of sexual harassment against Board Member Stanton. The Individual Defendants are not entitled to summary judgment as to this claim.

## VI.    Intentional Infliction of Emotional Distress – Individual Defendants

"Under Mississippi law, a plaintiff may recover under a theory of intentional infliction of emotional distress '[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally, even though there has been no physical injury. In such instances, it is the nature of the act

itself – as opposed to the seriousness of the consequences – which gives impetus to legal redress[.]" *Bowden v. Young*, 120 So. 3d 971, 980 (2013) (quoting *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981) (overruled on other grounds)). "In other words, the conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Pegues v. Emerson Elec. Co.*, 913 F.Supp. 976, 982 (N.D. Miss. 1996)).

Whether the conduct of the Individual Defendants was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" is a factual determination for a jury to decide.

## CONCLUSION

For these reasons, the Court concludes that summary judgment in favor of Defendant WBCSD is appropriate as to the Title VII claims of retaliation and harassment, and that genuine issues as to material facts preclude summary judgment as to all other claims against Defendant WBCSD. The Court further concludes that summary judgment in favor of Defendants Henry, Stanton, Honorable, and Lloyd but not Defendant Griffin is appropriate as to the claims under 42 U.S.C. § 1983 and the Equal Protection Clause; that summary judgment in favor of the Individual Defendants is appropriate as to the claims under 42 U.S.C. § 1983 and the First Amendment; and that genuine issues as to material facts preclude summary judgment as to all other claims against the Individual Defendants.

Remaining for trial as to Defendant WBCSD are Plaintiff's claims of sexual discrimination; breach of contract; and negligent infliction of emotional distress. Remaining for trial as to the Individual Defendants are Plaintiff's claims of civil conspiracy and intentional infliction of emotional distress. In addition, Plaintiff's claim of quid pro quo sex discrimination

21

under 42 U.S.C. § 1983 and the Equal Protection clause as to Defendant Griffin remains for trial.

**ACCORDINGLY, IT IS ORDERED**:

1. Defendant WBCSD's Motion for Summary Judgment is **GRANTED** to the Extent WBCSD seeks summary judgment as to the Title VII claims of retaliation and harassment and is **DENIED** in all other respects.

2. The Motion for Summary Judgment filed by Defendants Griffin, Stanton, Henry, Honorable, and Lloyd (ECF No. 126) is **GRANTED** to the extent Defendants Henry, Stanton, Honorable, and Lloyd seek summary judgment as to the claims under 42 U.S.C. § 1983 and the First Amendment**; GRANTED** to the extent Defendants Stanton, Henry, Honorable, and Lloyd seek summary judgment as to the claims under 42 U.S.C. § 1983 and the Equal Protection Clause; and is **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED**, this the 4th day of August, 2023.

**/s/  Michael P. Mills_____**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**